IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael O'dell Seegers, | ) | C/A No.: 1:16-1263-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civ. Rule 73.01(B) (D.S.C.), and the order of the Honorable Margaret B. Seymour dated April 28, 2016, referring this matter for disposition. [ECF No. 6]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals. [ECF No. 5].

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.    Relevant Background

   A.    Procedural History

   On November 13, 2012, Plaintiff protectively filed an application for DIB in which he alleged his disability began on April 8, 2008. Tr. at 63 and 131–36. His application was denied initially and upon reconsideration. Tr. at 85–88 and 90–95. On April 1, 2015, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Ann G. Paschall. Tr. at 29–49 (Hr'g Tr.). The ALJ issued an unfavorable decision on June 9, 2015, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 8–28. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 25, 2016. [ECF No. 1].

   B.    Plaintiff's Background and Medical History

      1.    Background

   Plaintiff was 59 years old at the time of the hearing. Tr. at 34. He completed the second grade. Tr. at 148. His past relevant work ("PRW") was as a weaver. Tr. at 47. He alleges he has been unable to work since April 8, 2008. Tr. at 131.

      2.    Medical History

   Plaintiff presented to Benjamin C. Pinner, M.D. ("Dr. Pinner"), for evaluation of hypothyroidism, hypertension, and hyperlipidemia on January 28, 2008. Tr. at 287. Dr. Pinner indicated Plaintiff's hypothyroidism was controlled with Synthroid and his

hypertension was controlled by diet. *Id.* He stated Plaintiff's cholesterol was not at its goal. *Id.*

On February 18, 2008, Plaintiff reported moderate pain after sustaining an on-the-job injury to his right fourth toe. Tr. at 284. Dr. Pinner diagnosed an ulcer, prescribed Lortab and a 10-day course of Doxycycline, gave Plaintiff a work excuse, and instructed him to return in four days. Tr. at 285–86. On, February 28, 2008, Dr. Pinner observed Plaintiff to have a small ulceration medially and erythema extending proximally to the base of the toe. Tr. at 278. He prescribed a four-day course of Doxycycline. *Id.*

Plaintiff complained of dizziness and tinnitus on February 19, 2009. Tr. at 273 and 274. Dr. Pinner observed no abnormalities on examination. Tr. at 274–75. He prescribed Antivert for vertigo, Synthroid for hypothyroidism, Lisinopril for hypertension, and Prilosec for gastroesophageal reflux disease ("GERD"). Tr. at 275–76.

Plaintiff followed up for hypertension, hypothyroidism, and GERD on July 12, 2010. Tr. at 269. He complained of back pain. Tr. at 270. A physical examination was unremarkable. Tr. at 270–71. Dr. Pinner recommended Plaintiff restart Synthroid for hypothyroidism. Tr. at 271. He prescribed Triamterene-HCTZ for hypertension and Omeprazole for GERD. *Id.*

On September 13, 2010, Plaintiff reported chest pain and cramping in his lower back and leg. Tr. at 267. Dr. Pinner observed Plaintiff to have some lower paraspinal muscle tenderness. Tr. at 268. He stated he suspected Plaintiff's cramping pain may be a side effect of his blood pressure medication. *Id.* He discontinued Triamterene-HCTZ and prescribed Procardia XL. *Id.*

Plaintiff followed up with Dr. Pinner regarding hypertension and hypothyroidism on September 15, 2011. Tr. at 261. A physical examination was unremarkable. Tr. at 261–62. However, Dr. Pinner reduced Plaintiff's dosage of Synthroid after reviewing lab test results. Tr. at 260.

On December 19, 2011, Plaintiff complained of chest pain that radiated to his back and worsening hypertension. Tr. at 258. He reported fatigue and dyspnea. *Id.* Dr. Pinner indicated Plaintiff's symptoms sounded musculoskeletal, but he encouraged Plaintiff to schedule calcium scoring because of his risk factors for coronary artery disease. Tr. at 259. A chest x-ray showed Plaintiff to have poor inspiration, but was otherwise normal. *Id.* An electrocardiogram ("EKG") was also normal. *Id.* Lab tests indicated Plaintiff's thyroid medication was working properly. *Id.*

On August 21, 2012, Plaintiff complained that his hypertension was worsening and had caused him to experience headaches and chest pain. Tr. at 253. He reported his energy had decreased over the prior three-month period and that he had felt more anxious. *Id.* He complained of paresthesias. *Id.* Dr. Pinner described Plaintiff as having an anxious mood and affect, but noted no other abnormalities on examination. Tr. at 253–54. He prescribed Xanax to be taken as needed and changed Plaintiff's hypertension medication from Procardia to Exforge. Tr. at 254.

Plaintiff presented to Dr. Pinner on September 17, 2012, for hypertension and associated headache. Tr. at 251. Dr. Pinner noted no abnormalities on examination. Tr. at 251–52. He encouraged Plaintiff to work on reducing his weight to control his blood pressure and cholesterol. Tr. at 252.

On April 8, 2013, Plaintiff followed up for hypertension and hypothyroidism. Tr. at 321. He reported a sore throat, increasing fatigue, and generalized muscle aches. *Id.* Dr. Pinner noted no abnormalities on examination. Tr. at 321–22.

On April 29, 2013, an x-ray of Plaintiff's right knee showed a small joint effusion and mild degenerative changes of the medial and patellofemoral compartments. Tr. at 300. An x-ray of his left knee indicated minimal degenerative change of the medial knee joint compartment. Tr. at 302. An x-ray of Plaintiff's back showed mild disc degenerative changes at the T12-L1 and L5-S1 levels. Tr. at 301.

Plaintiff presented to Branham Tomarchio, M.D. ("Dr. Tomarchio"), for a consultative examination on May 18, 2013. Tr. at 304–09. Plaintiff described chronic pain in his lumbar spine that was associated with some numbness and weakness in his lower extremities and burning in his legs. Tr. at 306. He also endorsed some pain in his knees and neck. *Id.* He reported abilities to dress and feed himself; to stand for 30 minutes at a time; to walk for two miles; to sit for 30 minutes; to lift 50 pounds; and to engage in activities of daily living ("ADLs") that included driving, sweeping, mopping, vacuuming, washing dishes, shopping, climbing stairs, and mowing grass. *Id.* Dr. Tomarchio observed Plaintiff to ambulate from the office into the examination room; to shake his hand with a firm grip; to sit in the interview chair without difficulty; to rise to move to the examination chair without difficulty; and to hear and speak normally. Tr. at 308. He noted Plaintiff's spine showed no evidence of deformity and was not tender to palpation. *Id.* Plaintiff's extremities showed no evidence of edema, cyanosis, or clubbing. *Id.* His joints demonstrated no redness, swelling, or effusion. *Id.* He had 5/5 grip strength

5

bilaterally. *Id.* Plaintiff demonstrated normal fine and gross manipulative skills. *Id.* He had normal range of motion ("ROM") throughout his spine and extremities. *Id.* He was able to walk and squat without difficulty. *Id.* Plaintiff had normal motor strength and reflexes and his muscles showed no atrophy. *Id.* Dr. Tomarchio assessed chronic back pain, but indicated Plaintiff had "no objective evidence of significant functional capacity deficit." Tr. at 309.

State agency consultant Debra C. Price, Ph. D. ("Dr. Price"), reviewed the evidence and completed a psychiatric review technique form ("PRTF") on June 4, 2013. Tr. at 56–57. She considered Listings 12.02 for organic mental disorders and 12.06 for anxiety-related disorders and found that Plaintiff had mild restriction of ADLs and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation that were of extended duration. *Id.* Dr. Price found that Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically-based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 58–60. She stated Plaintiff's symptoms and impairments were severe, "but would not preclude the performance of simple, repetitive work tasks." Tr. at 60. She indicated Plaintiff could understand and remember simple instructions; carry out short and simple instructions; maintain concentration and attention for at least two hours; respond appropriately to

coworkers, supervisors, and the general public; and be aware of normal hazards and take appropriate precautions. *Id.*

On June 25, 2013, Plaintiff complained of a gradual onset of fatigue that had been occurring in a persistent pattern for months. Tr. at 317. He reported generalized muscle aches and pain in his bilateral knees and lower back. *Id.* Dr. Pinner observed Plaintiff to be anxious; to be tender to palpation over his left sacroiliac joint; and to have a coarse right knee. Tr. at 318. He prescribed Diclofenac Sodium for pain and Cymbalta for mood. *Id.* He recommended Plaintiff avoid exposure to the sun. *Id.*

Plaintiff reported weight gain, fatigue, and dry skin on August 26, 2013. Tr. at 335. Dr. Pinner noted no abnormal findings on examination. Tr. at 335–36. He discontinued Diclofenac Sodium and prescribed Feldene for osteoarthritis in Plaintiff's knee. Tr. at 336. He increased Plaintiff's dosage of Cymbalta from 30 to 60 milligrams and refilled his prescriptions for Exforge and Synthroid. *Id.*

On October 14, 2014, Plaintiff complained of hypertension, pain in his shoulders and knee, and depression. Tr. at 356. Dr. Pinner noted no abnormalities on examination. Tr. at 357. He diagnosed shoulder bursitis. *Id.* He refilled Plaintiff's prescription for Hydrocodone and indicated he could take the medication up to four times a day. *Id.*

Plaintiff reported anxiety that was accompanied by insomnia and sleep disturbance on March 5, 2015. Tr. at 352. He complained of pain in his left shoulder that was radiating toward his upper back. *Id.* Dr. Pinner observed Plaintiff to have reduced ROM in his bilateral shoulders. Tr. at 353.

3.    Education Records

Barbara Chapman of the Newberry County Adult Literacy Council drafted a letter on January 8, 2013, that indicated Plaintiff was enrolled in an Adult Basic Reading class from May 5, 2009, through February 2, 2012. Tr. at 166. She stated Plaintiff was able to increase his reading level from a first to a second grade level with one-and-a-half hours of one-on-one tutoring per week. *Id.*

A test administered on January 14, 2013, showed Plaintiff to be reading on a third grade level. Tr. at 170.

On March 24, 2014, Robert V. Shea, Jr., indicated in a sworn statement that he had served as a volunteer with the Newberry Literacy Society and had worked with Plaintiff during one to two hour sessions that took place twice a week for a period of six months to a year. Tr. at 223. He stated Plaintiff had difficulty learning words and recognizing known words in sentences. *Id.* He noted Plaintiff put forth good effort, but had a limited aptitude. *Id.* He stated Plaintiff's reading and writing skills were so limited that he would consider him illiterate. Tr. at 223–24.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on April 1, 2015, Plaintiff testified he was in special education classes and withdrew from school at the age of 15. Tr. at 34. He stated he attended a literacy class as an adult, but remained unable to read. Tr. at 35. He indicated he had obtained a driver's license because the test was administered orally. *Id.*

8

Plaintiff testified he started working at American Fiber and Finishing when he was 16 years old. Tr. at 36. He indicated he worked as a weaver because his reading problems did not prevent him from performing the job. *Id.* He stated his employer closed down. *Id.* He indicated he had some physical problems performing his job before the job ended. Tr. at 37. He stated he looked for other work, but denied having worked anywhere since April 4, 2008. *Id.*

Plaintiff testified he experienced pain in his knees, lower back, and shoulders. Tr. at 37. He indicated his back pain was exacerbated by bending and standing for too long. Tr. at 38. He stated he could walk for 15 minutes before he needed to stop and rest. *Id.* He indicated he could stand for less than 15 minutes at a time. *Id.* He testified he was unable to sit for a long period, but admitted that he had sat in the car for 35 to 40 minutes on his way to the hearing. Tr. at 38–39. He stated he had difficulty lifting two pounds. Tr. at 39.

Plaintiff stated he took Hydrocodone for pain. Tr. at 43–44. He indicated it provided some relief, but did not stop his pain. Tr. at 44. He testified he was instructed to take the medication every six hours, but was actually taking it closer to every four hours because his pain returned after only four hours. *Id.* He stated his medications caused him to have slowed thoughts and memory problems and to feel dizzy when he stood too quickly. Tr. at 42 and 44. He indicated his doctor instructed him to avoid working outside because of his history of skin cancer. Tr. at 42.

Plaintiff endorsed symptoms of depression as a result of being unable to help his wife. Tr. at 43. He indicated he had been taking medication for approximately three

years. *Id.* He stated he would often have crying spells, but indicated the medication had helped. *Id.*

Plaintiff indicated he had some difficulty getting in and out of the bath tub and tying his shoes. Tr. at 39–40. He stated he was able to drive, but sometimes chose not to do so because riding in a car exacerbated his back pain. Tr. at 35. He testified that his sleep was interrupted by pain during the night. Tr. at 40. He indicated he took naps in the morning and afternoon. *Id.* He stated he mowed his lawn with a riding mower, but indicated he had difficulty using the clutch. Tr. at 41. He testified his wife did the household chores, cooked, and shopped for groceries. *Id.*

b.    Vocational Expert Testimony

Vocational Expert ("VE") Carey A. Washington, Ph. D., reviewed the record and testified at the hearing. Tr. at 46. The VE categorized Plaintiff's PRW as a weaver, *Dictionary of Occupational Titles* ("*DOT*") number 683.682-038, as light with a specific vocational preparation ("SVP") of four. Tr. at 47. Although the VE indicated the job was classified as semiskilled, he stated he did not feel that it produced any transferable skills. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work that required lifting 25 pounds frequently and 50 pounds occasionally; could sit, stand, and walk for up to six hours each in an eight-hour workday; could read at a second or third grade level, but was essentially illiterate; was limited to simple, repetitive tasks and verbal instructions; and could perform jobs that required no more than occasional public contact. *Id.* The VE testified that the hypothetical individual could perform Plaintiff's PRW. *Id.*

10

The ALJ asked the VE to assume the hypothetical individual could not maintain attention and focus to stay on task for as much as two hours at a time and would require breaks in excess of a 15-minute morning break, a 30-minute afternoon break, and a 15-minute lunch break. Tr. at 47–48. She asked if the individual would be able to perform Plaintiff's PRW or any other work. Tr. at 48. The VE indicated the individual could perform no substantial gainful work activity. *Id.*

The ALJ asked the VE to assume the individual could not consistently work for eight hours a day and five days per week or would miss three or more days of work per month. *Id.* She asked if the individual could perform any jobs. *Id.* The VE stated no jobs would be available. *Id.*

2.    The ALJ's Findings

In his decision dated June 9, 2015, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2013.
2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 8, 2008 through his date last insured of March 31, 2013 (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of both knees, illiteracy, depression and anxiety disorders. (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to simple retentive tasks with verbal instructions and only occasional contact with the public.

11

6.    Through the date last insured, the claimant was capable of performing past relevant work as a weaver. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant was not under a disability, as defined in the Social Security Act, at any time from April 8, 2008, the alleged onset date, through March 31, 2013, the date last insured (20 CFR 404.1520(f)).

Tr. at 13–23.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to properly evaluate and weigh the medical opinions of record;

2)    the ALJ erred in finding that Plaintiff was capable of performing PRW, and Plaintiff's inability to perform PRW directed a finding that he was disabled under Medical-Vocational Rule 202.02 in light of his age, education, PRW, and the RFC assessed by the ALJ;

3)    the ALJ did not consider the combined effect of his impairments in determining whether his impairments met a Listing;

4)    the ALJ did not adequately consider the singular and combined effects of depression and anxiety, illiteracy, and pain caused by degenerative joint and disc disease in assessing Plaintiff's RFC;

5)    the ALJ did not evaluate Plaintiff's credibility in light of his work record;

6)    the ALJ erred in finding that Plaintiff's PRW existed in significant numbers; and

7)    the ALJ placed undeserved emphasis on Dr. Tomarchio's report.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*,

---

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

14

658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     Evaluation of Opinion Evidence

Plaintiff argues the ALJ erred in rejecting medical opinions from Drs. Pinner, Van Slooten, and Hammonds and the vocational opinion from Mr. Hinson that supported a finding that he was disabled. [ECF No. 13 at 7–8 and 14–15]. The Commissioner maintains the ALJ's findings were consistent with the medical opinions of record and that the ALJ provided adequate reasons for accepting opinions from the VE and Dr. Tomarchio in favor of Mr. Hinson's test results and opinion. [ECF No. 14 at 5–8].

ALJs must consider all medical opinions of record. 20 C.F.R. § 404.1527(b). Medical opinions may only be rendered by acceptable medical sources, which include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p; 20 C.F.R. § 404.1513(a). The regulations require that ALJs accord controlling weight to treating physicians' medical opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p.

If the record contains no opinion from a treating physician or if the ALJ determines that the treating physician's opinion is not entitled to controlling weight, she is required to evaluate all medical opinions of record based on the factors in 20 C.F.R. § 404.1527(c). Those factors include (1) the examining relationship between the claimant

and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his treatment records; (4) the consistency of the medical opinion with other evidence in the record; (5) the specialization of the medical provider offering the opinion; and (6) any other relevant factors that tend to support or contradict the opinion. *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(c).

Other sources, including nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, therapists, educational personnel, social welfare agency personnel, rehabilitation counselors, spouses, other relatives, friends, neighbors, clergy, and former coworkers and employers, may offer opinions, as well. *See* 20 C.F.R. § 404.1513(d). Although ALJs are not required to evaluate these sources' opinions as stringently as opinions from acceptable medical sources, ALJs should be guided by the basic principles outlined in 20 C.F.R. § 404.1527 in considering them. SSR 06-03p.

ALJs are not required to expressly discuss each factor in 20 C.F.R. § 404.1527(c), but their decisions should demonstrate that they considered and applied all the factors and accorded each opinion appropriate weight in light of the evidence of record. *See Hendrix v. Astrue*, No. 1:09-1283-HFF, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). It is not the role of this court to disturb the ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not

given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (unpublished table decision) (per curiam).

In view of the foregoing authority, the undersigned considers Plaintiff's specific allegations of error.

### a.    Dr. Pinner's Opinions

On February 1, 2013, Dr. Pinner indicated Plaintiff's mental diagnosis was anxiety. Tr. at 296. He stated he had prescribed Xanax to be taken as needed. *Id.* He indicated Plaintiff's anxiety had improved with Xanax and stated he had not recommended psychiatric care. *Id.* He described Plaintiff as being oriented to time, person, place, and situation; demonstrating an intact thought process and appropriate thought content; showing a worried/anxious mood/affect; and having good attention/concentration and memory. *Id.* He assessed Plaintiff as having a slight work-related limitation in function as a result of his mental condition and noted he "may become anxious with some work duties." *Id.* He stated Plaintiff was capable of managing his funds. *Id.*

Dr. Pinner completed a physical capacities evaluation on March 22, 2014. Tr. at 339–41. He indicated Plaintiff should be able to sit for four hours, stand for two hours, and walk for two hours in an eight-hour workday. Tr. at 339. He stated Plaintiff could continuously lift up to 20 pounds and could occasionally lift 20 to 100 pounds. *Id.* He stated Plaintiff could continuously carry up to 20 pounds; could occasionally carry up to 50 pounds; and could never carry over 50 pounds. Tr. at 340. He indicated Plaintiff should be able to use his extremities for simple grasping, handling, reaching, pushing and

pulling, hand manipulation, and operating foot and leg controls. *Id.* He stated Plaintiff could frequently climb stairs and lift his hands above shoulder level. *Id.* He indicated Plaintiff could occasionally climb ladders, bend unsupported, squat unsupported, kneel, be on scaffolding, and crawl. *Id.* He noted Plaintiff could frequently be exposed to moving machinery, noise, dust, fumes, and gases and could occasionally be exposed to unprotected heights, vibration, and extreme temperatures. Tr. at 341. He indicated Plaintiff did not use any mobility aides or devices. *Id.*

The ALJ adequately considered Dr. Pinner's February 2013 opinion that Plaintiff's anxiety caused a slight work-related limitation and that he may become anxious with some work duties. *See* Tr. at 296. She indicated she gave some weight to Dr. Pinner's opinion that Plaintiff had a slight work-related limitation of function because it was reasonable that he may become anxious with some work duties. Tr. at 22. She stated this opinion was supported by treatment records and was consistent with Plaintiff's ADLs. *Id.* Dr. Pinner did not specify any particular work duties that Plaintiff would have difficulty performing or should avoid. *See id.* In the absence of specific restrictions from Dr. Pinner, it was not unreasonable for the ALJ to find that Plaintiff's anxiety would affect his ability to deal with the public and to limit him to jobs that required only occasional public contact.

The ALJ's evaluation of Dr. Pinner's March 2014 opinion provides sufficient reasons for declining to give it controlling weight and reflects her consideration of the examining and treatment relationship, the supportability of Dr. Pinner's opinion in his records, the consistency of his opinion with the other evidence, and other relevant

factors.[3] The ALJ noted Plaintiff was insured for DIB through March 31, 2013, but Dr. Pinner rendered the opinion approximately a year later and did not indicate it applied to the earlier period. *See* Tr. at 20. The record supports the ALJ's conclusion that Plaintiff's treatment history was inconsistent with Dr. Pinner's opinion. *See* Tr. at 18–19 and 20. As the ALJ noted, Plaintiff complained to Dr. Pinner of back pain on few occasions prior to his DLI. *See* Tr. at 18; *see also* 253–54 (noting Plaintiff's complaint of paresthesias, but indicating no musculoskeletal abnormalities on physical examination), 267–68 (noting Plaintiff's complaint of cramping in his lower back and leg, observing some lower paraspinal muscle tenderness, and opining that cramping pain may be a side effect of blood pressure medication), and 270 (noting a complaint of back pain, but finding no abnormalities). The ALJ also noted that Plaintiff did not report knee pain prior to his DLI and that Dr. Pinner did not prescribe any medication for pain prior to June 2013. *See* Tr. at 18–19 and 20. Earlier in the decision, the ALJ noted that the objective testing and Dr. Tomarchio's examination findings showed Plaintiff to have mild degenerative disc disease and degenerative joint disease in the period after his DLI. *See* Tr. at 19. Finally, the ALJ stated Dr. Pinner's opinion was inconsistent with Plaintiff's reported ADLs. Tr. at 20. In light of the foregoing explanation, substantial evidence supports the ALJ's evaluation of Dr. Pinner's March 2014 opinion.

---

[3] Plaintiff does not allege and the record does not suggest Dr. Pinner had any particular medical specialization. Therefore, it was unnecessary for the ALJ to consider the specialization factor.

b.    State Agency Consultants' Opinions

On May 29, 2013, state agency medical consultant Dale Van Slooten, M.D. ("Dr. Van Slooten"), reviewed the record and found that Plaintiff's physical impairments were not severe. Tr. at 56. He determined that Plaintiff was unable to perform his PRW because his PRW was semiskilled, but Plaintiff was limited to unskilled work. Tr. at 60–62.

On July 22, 2013, state agency psychologist Michael Hammonds, Ph. D. ("Dr. Hammonds"), reviewed the record and completed a PRTF. Tr. at 74–76. He considered Listing 12.06 and found that Plaintiff had mild restriction of ADLs; moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and no episodes of decompensation that were of an extended duration. *Id.* Dr. Hammonds found that Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. Tr. at 77–79. He found that Plaintiff demonstrated abilities to complete simple two to three step commands; could maintain attention and concentration for two hours at a time, as required to perform simple tasks and complete an eight-hour day and 40-hour week; would do best in an environment with limited public contact; would do best with supervision that was direct and non-confrontational; and could adapt to a predictable work environment involving simple, repetitive tasks, but may have difficulty

adapting to new situations. Tr. at 79. Dr. Hammonds indicated Plaintiff was unable to perform his PRW because he was limited to unskilled work. Tr. at 79–81.

The ALJ appropriately relied on evidence obtained after Dr. Van Slooten reviewed the record to support her decision to give little weight to his opinion that Plaintiff had no severe impairments. *See* Tr. at 20. Subsequent evidence showed Plaintiff to have degenerative disc disease in his back and degenerative joint disease in his bilateral knees. *See id.*

Plaintiff argues the ALJ erred in giving little weight to Dr. Van Slooten's opinion that he was unable to perform his PRW (ECF No. 13 at 7), but opinions on an individual's ability to perform PRW are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). While the ALJ was not required to give any special significance to Dr. Van Slooten's opinion that Plaintiff was unable to perform his PRW, it is unclear from her decision whether she accepted his opinion that Plaintiff was limited to unskilled work. Pursuant to SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." This definition and the fact that the ALJ limited Plaintiff to "simple retentive tasks" suggest she limited him to unskilled work. However, the ALJ did not specify that Plaintiff was limited to unskilled work and she found that he was capable of performing a job that is classified by the *DOT* as semiskilled. Therefore, it is unclear from the ALJ's decision whether she restricted Plaintiff to unskilled work.

Although the ALJ weighed Dr. Hammonds's opinion and offered no reasons for rejecting any of his findings, she failed to incorporate all of the limitations he indicated in the assessed RFC. The ALJ accorded some weight to Dr. Hammonds's opinion because "it reflects consideration of the medical record by a specialist who is familiar with Social Security regulations, and is consistent with the claimant's activities of daily living." Tr. at 21. She found that Plaintiff's and his wife's statements that he was anxious and stressed around people were consistent with Dr. Hammonds's finding of moderate limitations to his ability to interact with the general public. *Id.* She stated Dr. Hammonds's opinion that Plaintiff was restricted to simple, routine tasks because his illiteracy was well-supported by the record. *Id.* The ALJ limited Plaintiff to "simple retentive tasks with verbal instructions and only occasional contact with the public," but she did not specify that he was limited to unskilled work, include any restrictions that addressed the type of supervision he would require, or address his ability to adjust to changes in the workplace. In the absence of an explanation from the ALJ as to why she did not include these additional limitations, her evaluation of Dr. Hammonds's opinion is flawed.

c.      Mr. Hinson's Findings and Vocational Opinion

Plaintiff attended a vocational evaluation with Gerald N. Hinson, M. Ed. ("Mr. Hinson"), on April 5, 2014. Tr. at 343–46. Mr. Hinson tested Plaintiff's aptitudes for motor coordination, finger dexterity, and manual dexterity. Tr. at 344. Plaintiff's scores in all three areas indicated he had a minimal ability to perform or was unable to perform. *Id.* Mr. Hinson indicated he found the results of the testing to be a valid and accurate assessment of Plaintiff's ability to work. Tr. at 345. He further indicated Plaintiff

struggled with reading words that were on a first and second grade level. *Id.* Mr. Hinson stated Plaintiff's PRW was performed at a light to medium exertional level and required above-average motor coordination, finger dexterity, and manual dexterity. *Id.* He indicated Plaintiff would be unable to perform his PRW and that other sedentary and light jobs would require motor coordination, finger dexterity, manual dexterity, and a higher degree of literacy. *Id.*

The ALJ adequately evaluated Mr. Hinson's test results and his opinion that Plaintiff was unable to perform any jobs. As indicated above, an opinion that an individual is disabled or unable to perform PRW carries no special significance because the disability decision is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Substantial evidence supports the ALJ's decision to accord little weight to Mr. Hinson's test results regarding Plaintiff's dexterity and motor coordination. *See* Tr. at 19 and 21. The ALJ noted that Mr. Hinson was not an acceptable medical source; that the tests were conducted a year after Plaintiff's DLI; that Mr. Hinson did not indicate his opinion was retrospective; that Dr. Tomarchio observed Plaintiff to have no limitations in either hand in May 2013; that Dr. Pinner opined that Plaintiff could use his bilateral hands for repetitive action; and that no medically-determinable impairment accounted for the symptoms. Tr. at 19 and 21. Thus, the ALJ discounted Mr. Hinson's opinion based on its inconsistency with evidence in the record that reflected Plaintiff's functioning closer to his DLI. Furthermore, the ALJ correctly noted that she could not rely on evidence of decreased manual dexterity in the absence of evidence of an impairment that caused the symptom. *See Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) ("Thus, for disability to

24

be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established.").

### 2.    Ability to Perform PRW and Medical-Vocational Rules

Plaintiff argues the ALJ erred in finding that he was capable of performing his PRW. [ECF No. 13 at 9–10 and 20]. He contends Mr. Hinson opined that his PRW was performed at the light to medium exertional level and above. *Id.* at 11–12. He maintains the ALJ did not consider his age and erred in not applying Grid Rule 202.02 to find he was disabled as of his fifty-fifth birthday. *Id.* at 10–11. He further argues the ALJ did not question the VE as to whether he was capable of performing his PRW with the limitations she ultimately included in her RFC assessment. *Id.* at 21–22.

The Commissioner argues Plaintiff has not met his burden to prove he was unable to perform his PRW. [ECF No. 14 at 16]. She maintains the ALJ relied on the VE's testimony in concluding that Plaintiff was able to perform his PRW with the assessed RFC. *Id.* at 18. She further contends the Social Security Administration is not required to show that jobs exist in significant numbers if a claimant is able to perform PRW. *Id.* at 18 n.2.

A claimant will generally be found "not disabled" if his RFC allows him to meet the physical and mental demands of his PRW as actually performed or as customarily performed throughout the economy. SSR 82-62. "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." *Id.* The ALJ must carefully evaluate the claimant's statements as to which PRW

requirements can no longer be met and the reasons for his inability to meet those requirements; medical evidence establishing how the impairment limits the claimant's ability to meet the physical and mental requirements of the work; and in some cases, supplementary or corroborative information from employers, the *DOT*, and other sources on the requirements of the work as generally performed in the economy. *Id.* Because a determination as to whether a claimant can perform PRW is important and sometimes even controlling, it is very important that the ALJ make every effort "to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.*

The ALJ must make the following specific findings of fact to support a determination that the claimant can perform PRW: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of his PRW; and (3) a finding of fact that the claimant's RFC would permit a return to his PRW. *Id.*

The ALJ made a specific finding of fact as to Plaintiff's RFC. *See* Tr. at 17 (finding Plaintiff had the RFC to perform light work, but was limited to simple, retentive tasks with verbal instructions and only occasional contact with the public). She also made a finding of fact as to the physical and mental demands of Plaintiff's PRW. *See* Tr. at 23 (noting that the *DOT* classified work as a weaver as being light and semiskilled with an SVP of 4). Finally, she concluded that Plaintiff's RFC would allow him to return to his PRW. *See* Tr. at 23 (finding Plaintiff was capable of performing his PRW as a fiber weaver as actually performed).

Although the ALJ explicitly found that Plaintiff was capable of performing his PRW as a weaver as actually performed, she relied on the *DOT*'s description of the job

instead of Plaintiff's description. *See* Tr. at 23. In *Harris v. Secretary, Dept. of Health and Human Services*, 866 F.2d 1415 (Table), 1989 WL 7013, at *2 (4th Cir. 1989), the court remanded the case because the ALJ's decision was devoid of reference to or discussion of the plaintiff's explanation as to why he was unable to perform his past relevant work. Here, the ALJ indicated Plaintiff's PRW "included a full range of the light exertional level," but she did not reference Plaintiff's description of the physical demands of his PRW. *See id.* Plaintiff described his work as a weaver as requiring he frequently lift 25 pounds and lift up to a maximum of 50 pounds.[4] Tr. at 149. This was consistent with performance of work at the medium exertional level. *See* 20 C.F.R. §404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). Thus, the ALJ's determination that Plaintiff's PRW was performed at the light exertional level conflicts with his description of the work as requiring medium exertion. Given the assessed RFC for light work, Plaintiff was unable to perform his PRW as he described having performed it.

Because an individual is not disabled if he can either return to PRW as customarily performed or as actually performed, the undersigned has considered whether the ALJ cited substantial evidence to support a conclusion that Plaintiff could perform his PRW as customarily performed. The ALJ noted that the *DOT* described the job of weaver as being light and semiskilled with an SVP of four. Tr. at 23. She accepted the VE's testimony that the job of weaver could be performed by an individual who could lift no more than

---

[4] Plaintiff's description was sustained by Mr. Hinson's assessment that his PRW was performed "at the light–medium and above exertional demand." *See* Tr. at 345. The ALJ also posed a hypothetical question to the VE that indicated the individual was limited to work at the medium exertional level. *See* Tr. at 47.

25 pounds frequently and 50 pounds occasionally; could sit, stand, or walk up to six hours each in an eight-hour day; could read at the second or third grade level; could perform simple, repetitive tasks with verbal instructions; and could be exposed to the public on no more than an occasional basis. Tr. at 23 and 47. The *DOT's* and the VE's classification of the job of weaver as requiring light exertion is consistent with the assessed RFC,[5] but their classification of the job as semiskilled presents a problem. As discussed above, the ALJ's inclusion in the RFC of restrictions to simple, retentive tasks is consistent with performance of unskilled work. An individual limited to unskilled work would be unable to perform a semiskilled job. In addition, the *DOT* describes the job of "weaver" as requiring the individual "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *See* 683.682-038 WEAVER. *Dictionary of Occupational Titles* (4th ed., revised 1991), 1991 WL 678228. This conflicts with the RFC's restriction to verbal instructions. The job description also indicates a need to "[r]ead at a rate of 190–215 words per minute," which may conflict with the restriction to reading at a second or third grade level. *See id.*

Although an ALJ may accept a VE's testimony that conflicts with the *DOT*, the ALJ must acknowledge the conflict and provide her reasons for accepting the VE's testimony over the information in the *DOT*. *See Pearson v. Colvin*, 810 F.3d 204, 208–10 (4th Cir. 2015); *see also* SSR 00-4p. In light of the ALJ's failure to acknowledge the

---

[5] Plaintiff correctly points out that the assessed RFC did not match the hypothetical question the ALJ presented to the VE. *See* ECF No. 13 at 21–22. However, the discrepancy between the exertional level included in the hypothetical question and that adopted in the assessed RFC was inconsequential because 20 C.F.R. § 404.1567(c) provides "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work."

conflict between the *DOT* and the VE's testimony, the record lacks substantial evidence to support a finding that Plaintiff could perform his PRW as customarily performed.

It appears the ALJ found Plaintiff capable of meeting the physical demands of the job of weaver as customarily performed and the mental demands of the job as actually performed. While she did not explicitly acknowledge a conflict between the mental limitations included in the RFC and a finding that Plaintiff could perform semiskilled work, she relied on Plaintiff's past ability to fulfill the mental requirements of the work. She stated "[a]lthough his residual functional abilities limit him to simple repetitive tasks and verbal instructions, I find that he is able to return to past relevant work because this limitation is based solely on the claimant's illiteracy. *Id.* She noted that Plaintiff had worked in the textile industry for in excess of 36 years and was able to perform the job despite his illiteracy. *Id.* Because the ALJ did not find that Plaintiff was capable of meeting both the physical and mental demands of his PRW, substantial evidence does not support her finding that he could return to PRW.

The court declines to find that the Medical-Vocational Rules direct a finding of disability. Although Medical-Vocational Rule 202.02[6] would direct a finding of "disabled" as of Plaintiff's fifty-fifth birthday if he were unable to perform his PRW as actually and customarily performed, clarification from the ALJ and the VE may result in a determination that Plaintiff was able to perform his PRW as customarily performed. The court also notes that Plaintiff has not amended his alleged onset date of disability to

---

[6] Medical-Vocational Rule 202.02 directs a finding of "disabled" if an individual is limited to light work; is of advanced age; has a limited or less education; and has a history of semiskilled or skilled work that results in no transferable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.02.

his fifty-fifth birthday, and that the ALJ's reconsideration of the state agency consultants' medical opinions and vocational evidence could result in a finding that he was disabled before his fifty-fifth birthday.

### 3.     Additional Allegations of Error

Having found remand appropriate based on the ALJ's failure to adequately consider the opinions of Drs. Van Slooten and Hammonds and Plaintiff's ability to perform PRW, the court declines to address Plaintiff's additional allegations of error.

## III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

January 27, 2017                                    Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge